# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CASE NO. 4:15-CR-18 |
| | § | Judge Mazzant/Judge Nowak |
| SHAWN DAVID WOOLDRIDGE | § | |

## MEMORANDUM ADOPTING
## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On April 22, 2016, the amended report of the Magistrate Judge (Dkt. #68) was entered containing proposed findings of fact and recommendations that Defendant Shawn David Wooldridge's ("Defendant") Motion for Suppression of Evidence ("Motion to Suppress") (Dkt. #49) be granted. Having received the amended report of the Magistrate Judge (Dkt. #68), and having considered the Government's timely filed objections (Dkt. #69), the Court is of the opinion that the recommendation of the Magistrate Judge is correct and the Motion to Suppress should be **GRANTED**.

### BACKGROUND

The facts in this case originate from Defendant's assault of his girlfriend, Tanya Terry ("Ms. Terry"), and subsequent seizure of a firearm, firearm cleaning kit, and ammunition at the residence Defendant shared with Ms. Terry (*see generally* Dkts. #49; #51; #68). The underlying facts are set out in further detail by the Magistrate Judge, and need not be repeated in their entirety (*see* Dkt. #68). Accordingly, the Court sets forth herein only those facts pertinent to the Government's objections (Dkt. #69).

On July 25, 2014, Denton County law enforcement officers responded to an assault in progress at a convenience store located at 26411 Highway 380, Lincoln Park, Texas (Dkts. #49 at p. 2; #51 at p. 1). Law enforcement officers determined Defendant assaulted Ms. Terry in the convenience store, and Defendant was placed under arrest (Dkt. #49 at p. 2). During an interview with responding police officers at the scene, Ms. Terry indicated that she was afraid of Defendant and scared he would attempt to kill her when released from custody (Dkt. #51 at p. 1). Ms. Terry advised that Defendant owned a firearm, which was located inside the residence she shared with Defendant, and that she was frightened Defendant would harm her if she consented to a search of the residence (Dkts. #49 at pp. 2, 3, 5; #51 at p. 2). Ms. Terry also allegedly told law enforcement officers that Defendant had previously threatened to kill her and threatened to kill her son and her son's child (Dkt. #51 at p. 2)[1].

After Defendant was in custody, Corporal Jesse Wyman ("Corporal Wyman") executed a search warrant affidavit in support of a search warrant for Ms. Terry's residence (Dkt. #49-1 at p. 2). The warrant sought to seize firearms and ammunition in order to "prevent further violence" (*see* Dkts. #49 at p. 2; #49-1). Corporal Wyman's search warrant affidavit states the following, in pertinent part:

> 4. It is the belief of Affiant, and he hereby charges and accuses, that: [Defendant] ..., on an ongoing basis, continues to possess a firearm to wit: small revolver, on the proper of the residence at 856 FM 2931, in the City of ... Providence Village on 7-25-14.
>
> 5. Affiant has probable cause for said belief by reason of the following facts:
>
> I, Jesse Wyman, am a licensed as [sic] peace officer in the State of Texas. I have been employed by the Denton County Sheriff's Office since 10-1-1998. I have been assigned to the Patrol Division since 2001 as Deputy, and currently assigned to the Patrol Division as Corporal since 2013.

---

[1] The statement regarding a threat to kill Ms. Terry's son and her son's child is only described in the Government's Response to Defendant's Motion to Suppress (Dkt. #51), and is not present in the arrest report or the search warrant affidavit.

> [Defendant] was arrested for Assault Family Violence-impeding breath on 7-25-14. I have un-confirmed information that [Defendant] has made threats with his revolver in the past. The victim (Tonya Terry) is in fear for her life and stated he has a revolver and ammunition inside the residence. Ms. Terry is fearful that [Defendant] will shoot her when he is released from jail. Ms. Terry stated she was too afraid to allow us to enter their residence to take the weapon for safe keeping. I believe the weapon needs to be seized and placed into safe keeping to prevent further violence.
>
> My Belief is based on the Following Facts:
>
> On 7-25-14 I, Cpl. Jesse Wyman, responded to a domestic disturbance at the 7-11 on Hwy. 380 at FM 720 in Lincoln Park, Texas. I made contact with Tonya Terry and [Defendant] (common-law husband and wife). It was determined [through] the investigation that [Defendant] assaulted Ms. Terry inside the convenience store and was placed under arrest. While interviewing Ms. Terry, a rumor about [Defendant] having a firearm was confirmed. Ms. Terry stated he has a revolver in the residence and is very fearful [Defendant] will kill her when he is released from jail. Ms. Terry stated he would be even angrier if she allowed us to come to her residence and take the weapon for safe keeping. Ms. Terry requested we obtain a search warrant to get it. It is my belief that we place the weapon in safe keeping in order to prevent further violence in the residence.

(Dkt. #49-1 at p. 3-4). The state judge subsequently signed the search warrant authorizing the search of Ms. Terry's residence, and Corporal Wyman, along with several other officers, then searched Ms. Terry's residence (Dkt. #55 at p. 32). As a result of the search, law enforcement officers located and seized a .45 Caliber Taurus Judge revolver and a box of ammunition (Dkt. #49 at p. 3).

On February 11, 2015, a federal grand jury named Defendant in a one-count indictment alleging a violation of 18 U.S.C. § 922(g)(1), Possession of Firearms by a Felon (Dkt. #49 at p. 1). On March 8, 2016, Defendant filed a Motion to Suppress seeking to suppress any and all evidence seized from Ms. Terry's residence (Dkt. #49). The Government filed its Response to Defendant's Motion to Suppress on March 15, 2016 (Dkt. #51). On March 22, 2016, the Magistrate Judge held a hearing and heard oral argument on Defendant's Motion to Suppress

("March 22 Hearing") (*see* Dkt. #55). On March 23, 2016, the Magistrate Judge ordered the Parties to provide supplemental briefing on two issues: (1) whether probable cause to search for and seize a firearm and ammunition can be based on prevention of further violence, and (2) whether the Court may rely on suppression hearing testimony to prove the good-faith exception (Dkt. #54). On March 30, 2016, the Parties filed their supplemental briefs (Dkts. #56; #57). The Magistrate Judge entered a report and recommendation on April 5, 2016, recommending Defendant's Motion to Suppress be denied (Dkt. #58).

Following entry of the Magistrate Judge's report, on April 14, 2016, Defendant timely filed objections asserting that evidence not available to be presented at the March 22 Hearing would alter the analysis of the good-faith exception and that such evidence could be made available to the Court (Dkt. #61). In light of Defendant's objections, the undersigned referred this action back to the Magistrate Judge for further consideration (Dkt. #62). On April 18, 2016, the Magistrate Judge reconvened the hearing on Defendant's Motion to Suppress for the purpose of considering the evidence referenced in Defendant's Objections to the Report ("April 18 Hearing"). At the April 18 Hearing, the Government proffered clips from a dashboard camera video ("video") taken at the time of the underlying assault (Dkt. #67 at p. 10-12; Government's Ex. 1). The Magistrate Judge entered an amended report and recommendation on April 22, 2016, vacating the prior report and recommendation and recommending Defendant's Motion to Suppress be granted (Dkt. #68). On April 29, 2016, the Government timely filed objections (Dkt. #69).

## THE GOVERNMENT'S OBJECTIONS

The Government has objected to the Magistrate Judge's amended report and recommendation on two grounds (*see generally* Dkt. #69). Specifically, the Government objects

to (1) the Magistrate Judge's good-faith analysis, and (2) the Magistrate Judge's application of the "extreme sanction of exclusion ... without any analysis of whether exclusion in this case would serve the exclusionary rule's sole purpose – to deter further Fourth Amendment violations." *Id*. at pp. 1-2, 15 (internal citations and quotation marks omitted). Neither the Government nor Defendant object to the Magistrate Judge's finding that the search warrant affidavit failed to establish probable cause (*see* Dkts. #68 at pp. 9-12; #69). Accordingly, the Court adopts the Magistrate Judge's finding of no probable cause. The Court now addresses each of the Government's objections in turn.

## I.    *The Good-Faith Analysis*

"Under the good-faith exception, evidence obtained during the execution of a warrant later determined to be deficient is admissible nonetheless, so long as the executing officers' reliance on the warrant was objectively reasonable and in good faith." *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003) (citing *United States v. Leon*, 468 U.S. 897 (1984)). In considering whether the good-faith exception applies, the Court does not attempt to determine the police officers' subjective belief regarding the validity of the warrant. *See Leon*, 468 U.S. at 922 n.23. Rather, the Court's inquiry is "confined to the objectively ascertainable question of whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Id*. Good faith cannot be established if the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Payne*, 341 F.3d at 399-400 (quoting *United States v. Webster*, 960 F.2d 1301, 1307 n.4 (5th Cir. 1992)). The Fifth Circuit has indicated that, for a warrant to be utterly lacking in indicia of probable cause, the underlying affidavit would essentially have to be a "bare bones" affidavit. *See United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988) (citing *Leon*, 468

U.S. at 923). An affidavit is bare bones "if it is so deficient in demonstrating probable cause that it renders an officer's belief in its existence completely unreasonable." *Dodd*, 349 F. Supp. 2d at 1049 n.6 (citing *Craig*, 861 F.2d at 821); *see also Leon*, 468 U.S. at 923 (citations omitted). "Whether an affidavit is a bare bones affidavit is determined by a totality of the circumstances." *United States v. Robinson*, 741 F.3d 588, 597 (5th Cir. 2014) (citing *United States v. Fisher*, 22 F.3d 574, 578 (5th Cir. 1994)).

### a.  *Indicia of Probable Cause*

The Government first contends that the Magistrate Judge misapplied the good-faith analysis in the amended report and recommendation (Dkt. #69 at p. 6). Specifically, the Government objects to the Magistrate Judge's finding that the third exception to the good-faith exception, when a warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, applies in this case (Dkt. #69 at p. 7). The Magistrate Judge found that the search warrant affidavit in this case is a bare bones affidavit so lacking in indicia of probable cause as to render belief in its existence unreasonable because it "fails to provide evidence of any illegal activity and/or a nexus between the crime allegedly committed and the place to be searched" (Dkt. #68 at pp. 15-17). The Government argues that even though Corporal Wyman's affidavit is not perfect, it is far from bare bones because "it was filled with facts about places, names, locations and events" (Dkt. #69 at p. 8). The Court agrees that under Fifth Circuit precedent the affidavit is not bare bones, and disregards the Magistrate Judge's finding as to indicia of probable cause.

The Magistrate Judge relies predominantly on cases outside the Fifth Circuit in support of the finding of no indicia of probable cause (Dkt. #68 at pp. 15-17). The threshold in the Fifth Circuit for a bare bones affidavit is not demanding. *See United States v. Pope*, 467 F.3d 912,

6

920 (5th Cir. 2006). In *Pope*, the Fifth Circuit expounded upon its understanding of a "bare bones" affidavit:

> "Bare bones" affidavits typically contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause. Generally, examples of 'bare bones' affidavits include those that merely state that the affiant has cause to suspect and does believe or [has] received reliable information from a credible person and [does] believe that contraband is located on the premises. That is not the case here. Baird's affidavit was based on his direct participation in the illegal drug transaction with Pope and his continuing investigation of such activity. As the district court noted, the affidavit outlined in detail the illegal sale that [Pope] undertook with [Baird]."

*Id.* (internal citations omitted). Here, despite the affidavit's deficiencies in linking Defendant's possession of the firearm to an actual crime, it did contain facts about the firearm and facts alleging Defendant was linked to that firearm: it describes the likely location of the firearm, unconfirmed information that Defendant had made threats with this firearm, and corroborated information that Defendant possessed a firearm. It conveys Ms. Terry's fear that Defendant will shoot her and kill her when he is released from jail.

The affidavit does not reference a particular crime, but a reference to a particular crime is the only piece of information absent from the affidavit. It is, in fact, the presence of indicia of probable cause which makes the absence of a specified crime so conspicuous.

Though, as the Magistrate Judge correctly acknowledges, other circuits have set seemingly higher bars for the standard, the Court finds that the affidavit contained sufficient indicia of probable cause to surpass the third exception to the good-faith exception in this Circuit.

### b. *Reasonably Well-Trained Officer*

Having determined that none of the exceptions to the good-faith exception apply, the Court reviews whether a reasonably well-trained officer would have known that the warrant was

illegal despite the magistrate's authorization. *Leon*, 468 U.S. at 922 n.23. The Government objects to the Magistrate Judge's finding that a reasonably well-trained officer would not have relied on the search warrant affidavit in this case (Dkt. #69 at pp. 9-14).

i. *Information Outside the Search Warrant/Search Warrant Affidavit*

As an initial matter, the Government contends that the Magistrate Judge's amended report and recommendation no longer considers information outside the four corners of the search warrant affidavit and thus fails to consider the totality of the circumstances (Dkt. #69 at pp. 9-10). By way of background, in the vacated report and recommendation, the Magistrate Judge looked outside the four corners of the affidavit to consider Corporal Wyman's testimony at the March 22 Hearing – that he was aware Defendant was a felon – in determining that the good-faith exception applied (Dkt. #58 at p. 14). In the amended report and recommendation, the Magistrate Judge stated the officers' knowledge that Defendant was a felon could no longer be considered because the dash cam video revealed the officers did not believe the fact that Defendant was a felon prohibited him from having a firearm. The Magistrate Judge thus found, in considering the totality of the circumstances, that a reasonably well-trained officer would have known that a search warrant based on a mere probability of criminal activity is insufficient to support a search warrant (Dkt. #68). The Magistrate Judge specifically noted in the amended report and recommendation that "[w]hether the Court looks outside or stays within the four corners of the search warrant affidavit the evidence seized at Ms. Terry's residence should be suppressed." (Dkt. #68 at p. 23).

The Fifth Circuit has not determined whether a court may rely on suppression hearing testimony to prove the good-faith exception; however, the Western District of Texas, in *Dodd*, relied on *Payne* and case law from other circuits and found that it could look beyond the four

corners of the search warrant/affidavit to determine the "totality of the circumstances" and ultimately whether the officers reasonably relied on the warrant. *United States v. Dodd*, 349 F. Supp. 2d 1039, 1050-51 (W.D. Tex. 2004). The Court here analyzes, as the Government urges, the totality of the circumstances surrounding the search warrant affidavit, including the information contained inside the four corners of the affidavit and also that proffered at hearing, in order to determine if the law enforcement officers reasonably relied upon the search warrant.

### ii. *Reliance on the Search Warrant*

The Government contends that "it was objectively reasonable for the law enforcement officers who executed the search warrant to rely on the warrant's validity" and thus the good-faith exception applies (Dkt. #69 at p. 11). Specifically, the Government argues that the dashboard camera video establishes the officers' good faith because "it shows that they took the effort to determine whether [Defendant's] possession of the firearm was unlawful, they determined (incorrectly) that it wasn't unlawful, and that is why the search-warrant affidavit does not include any facts suggesting that the possession was unlawful." (Dkt. #69 at p. 16, n.2).

In the amended report and recommendation the Magistrate Judge analyzed the dashboard camera video and determined that the "video makes clear that Corporal Wyman believed, at the time of executing his affidavit, that Defendant was not a felon in possession of a firearm under Texas state law at the time of Defendant's arrest ..." (Dkt. #68 at p. 21 (citing Government's Ex. 2 at 20:29:40-20:36:20)). Based on the dashboard camera video, the Magistrate Judge determined that Corporal Wyman purposefully included only "preventing further violence" in the affidavit, after discarding other potential crimes, and that "[a] reasonably well-trained officer should have known that the affidavit did not establish that Defendant's firearm was either contraband and/or used in a crime and or illegal activity." (Dkt. #68 at p. 22).

9

The Magistrate Judge is correct that the search warrant affidavit in this case fails to link Defendant to the alleged commission of any actual crime involving the firearm to be seized (*see* Dkt. 49-1). Notwithstanding, the Government directs the Court's attention to what it defines as the "totality of information" known to the law enforcement officers at the time the search warrant was executed, which the Government argues is sufficient to satisfy the lower good faith standard:

- [T]hat on July 25, 2014, [Defendant] slammed [Ms.] Terry's head into the wall of a convenience store several times and choked her, making it difficult for her to breathe;

- [T]hat [Defendant] kept a revolver inside his and [Ms.] Terry's home and that earlier on the same day as the July 25, 2014 assault [Defendant] threatened to kill [Ms.] Terry's son and grandson;

- [T]hat after the July 25, 2014 assault [Ms.] Terry was terrified that [Defendant] would shoot her after his release from jail on the assault charge;

- That [Defendant] had previously threatened to kill [Ms.] Terry; and

- That months before the convenience-store incident Denton police had received an unconfirmed tip that [Defendant] kept a firearm at [Ms.] Terry's house and desired to "have it out" with Denton officers.

(Dkt. #69 at p. 11 (internal citations omitted)). However, the Government notably fails to include in its "totality" of the circumstances the remaining information known to the officers at the time the warrant was executed:

- Defendant was in custody for assaulting Ms. Terry at the convenience store at the time the warrant was sought (Dkt. #67 at pp. 16-17).

- The firearm to be seized was not used in the assault (Dkts. #49; #49-1).

- The firearm to be seized was in Ms. Terry's residence one mile away from the convenience store (the location of the assault) (*see* Dkt. #49-1).

- Ms. Terry was not going back to that residence on the evening of the assault.

- The officers had advised Ms. Terry they would apply for a protective order against Defendant the following morning, which would keep her safe (*see* Government's Ex. 2 at 20:35:10-45; *see also* Defendant's Ex. 1).

- The officers knew there were other ways to obtain the firearm, including by approaching the Bureau of Alcohol, Tobacco, Firearms, and Explosives (Dkt. #67 at pp. 13-14, 19).

- The officers had only uncorroborated statements that Defendant had previously threatened to harm Ms. Terry and/or her family members (Dkt. #49-1).

- The officers had only an uncorroborated tip that Defendant wanted to "have it out" with law enforcement officers (Dkt. #55 at pp. 22-23).[2]

- The officers were provided information that Defendant was not in violation of the Texas felon in possession statute (Dkt. #67 at pp. 17-18; Government's Ex. 2 at 20:33:00-20:36:00).[3]

- Corporal Wyman was adamant that the firearm had to be seized the evening of July 24, 2014 (Dkt. #67 at Government's Ex. 2 at 20:34:00-20:35:00).

Based on the above "totality," a reasonably well-trained officer, provided with the same information as the executing officers, would have concluded that the affidavit did not establish that Defendant's firearm was either contraband and/or used in a crime and or illegal activity. A reasonably well-trained officer would have believed that, even though indicia of probable cause contained in the affidavit suggest that Defendant may be in violation of a felon in possession statute (details regarding corroboration of Defendant's possession of a firearm, the location of said firearm, and the links between Defendant and the location), information provided to the

---

[2] An uncorroborated tip, standing alone, is rarely sufficient to constitute probable cause, but may contribute to a finding of probable cause when combined with independent corroboration. *See Illinois v. Gates*, 462 U.S. 213, 230 (1983). Here, the Government argues that Ms. Terry corroborated the previous anonymous tip that Defendant owned a firearm – which is true – however, Ms. Terry's statements combined with no independent corroboration are insufficient to constitute probable cause, *see Gates*, 462 U.S. at 230, and the officers believed Defendant could lawfully be in possession of the firearm.

[3] As Defendant's full criminal history demonstrates, he was confined for ten years on a felony Failure to Stop and Render Aid conviction, was paroled on October 19, 2010, and his parole was discharged on October 24, 2010. Thus, on July 25, 2014, he was not properly in possession of a firearm under Texas law. *See* Texas Penal Code § 46.04. Defendant's full criminal history was, however, not available or accurately conveyed to Corporal Wyman at the time he completed the affidavit. The officers, therefore, drew the incorrect conclusion that Defendant was not in violation in response to incorrect information before them.

theoretical "reasonably well-trained officer" at the time of executing the search warrant would have foreclosed this assumption. Further, the "reasonably well-trained officer" would understand that the details contained in the affidavit regarding Ms. Terry's personal concerns for her safety and Defendant's alleged or corroborated threats and acts of violence, may establish a probability of future criminal activity, but are insufficient to establish probable cause. Defendant was already in custody for assaulting Ms. Terry. Thus, while the affidavit references a past assault (which had concluded) and a possible future event (possible future violence), it fails to link Defendant's possession of the firearm with any illegal activity (*see* Dkt. #49-1).

The Government cites two appellate court cases which it argues are "instructive" in this case and should guide this Court's consideration of the totality of the circumstances (Dkt. #69 at p. 11). The first is *United States v. Guzman*, in which a woman reported to law enforcement officers that her boyfriend previously abused her and threatened to kill her with a rifle. 507 F.3d 681, 683 (8th Cir. 2007). The officer documented the abuse and threats in an incident report, but when the officer prepared the search warrant affidavit for "Aggravated Assault (DV) with a semi-auto rifle and shotgun," the incident report was inadvertently not attached to the affidavit. *Id*. The Eighth Circuit held that the good-faith exception applied notwithstanding the lack of probable cause (due to the failure to attach the incident report) in the search warrant affidavit because the officer knew of the missing facts. *Id*. at 686. *Guzman* is distinguishable for several reasons, the most notable being: (1) the defendant in *Guzman* was not in police custody at the time the warrant was executed (and indeed an arrest warrant was also issued for him at the same time), and (2) the firearm in *Guzman* was alleged to be used in the assault of the girlfriend (it was an instrument/evidence of the crime alleged); as compared to the present case where Defendant was in custody already for the assault, the assault did not involve the weapon sought in the

search warrant, and, in fact, no crime involving the weapon was actually alleged. *See id.* at 683-84.

The second case cited by the Government is a civil case, *Walczyk v. Rio*, 469 F.3d 139 (2d. Cir. 2007). Thomas Walczyk ("Mr. Walczyk") – a known firearm owner – made threats directly to law enforcement officers that he would "take matters into his own hands" and there would be a "bloodbath" if the police did not intervene in a property dispute. *Id.* In the underlying criminal action, the Government omits that the state appellate court found, as the Magistrate Judge did in this case, that the search warrant affidavit for seizure of the defendant's firearms was not supported by sufficient probable cause because it did not connect his possession of the firearms with an actual crime. *See id.* The Second Circuit, in the civil action, disagreed with the probable cause analysis in part, it appears, because Mr. Walczyk made threats directly to police officers, they were thus readily confirmed, whereas, in this case, Defendant's alleged threats were not corroborated at the time of the search warrant execution. *See id.* at 146-51. Moreover, the threats made in *Walczyk* were related to threatening violence in order to compel and direct police behavior.

In the present case, the Government concludes that, "knowing that [Defendant] had (1) assaulted Terry; (2) threatened to kill Terry and her family; and (3) threatened to 'have it out' with Denton police," a reasonably well-trained officer would not have known that a search warrant seeking a firearm to carry out those threats was illegal (Dkt. #69 at p. 14). The reasonably well-trained officer could have considered specifically: un-corroborated and unspecific threats made by Defendant with his revolver in matters unrelated to the assault, Ms. Terry's statement, "He told me I could never leave him unless it was in a pine box," Ms. Terry's conveyance that Defendant previously told her he would shoot her if she ever left him, the

Government's assertion—not referenced in the arrest report or in the search warrant affidavit—that Ms. Terry told the arresting officer that Defendant had threated to kill her son and her son's baby earlier that day, and uncorroborated evidence given by a third or fourth party that, at a previous time, when an unrelated traffic stop was happening near Defendant's house, Defendant told an unspecified family member "something to the effect of 'we're going to have it out' or 'this is it,'" and went outside with his gun with the intention to perhaps have a shootout with the deputy making the traffic stop (Dkt. #55 at pp. 41-42). With regards to the "have it out" story, no evidence suggests that Defendant took any threatening action with a firearm on that occasion, merely that he stood on his property with his firearm (Dkt. #55 at p. 42). To find "good faith" in the present matter would be to find that, even without an allegation of a legal violation, any individual who lawfully possesses a firearm is subject to search and seizure of that firearm based on uncorroborated testimony of a general threat made without any reference to that firearm.

The search warrant in this case is clearly related, not to any previous threat, but to Ms. Terry's and the executing officers' fear of future violence. A reasonably well-trained officer would know that a search warrant based on a mere probability of future illegal activity is insufficient particularly where, as here, the defendant is already in police custody, the firearm was not used in the assault, the firearm was at a location other than where the assault occurred, and other options were available to the officers. Accordingly, the evidence seized at Ms. Terry's residence should be suppressed and the Government's objection is overruled.

The Court notes that even if the Fifth Circuit were to determine that looking outside the four corners of the search warrant and affidavit is improper, the result herein would not change. Based solely on the search warrant affidavit, which fails to link Defendant's possession of the

firearm to any illegal criminal activity, a reasonably well-trained officer would still have concluded that that the search of Ms. Terry's residence was improper.

Though the issue of good faith turns on what a reasonably well-trained officer would believe rather than what the actual officer believed, the Court herein addresses the Government's contention that the officers' good faith is demonstrated when they "turned to a possible terroristic-threat charge, which plainly would have supported probable cause given [Defendant's] violent threats and [Ms.] Terry's fears of being murdered" and Corporal Wyman's failure to include that crime in his affidavit "was a mistake, not misconduct." (Dkt. #69 at p. 17) (citing Tex. Penal Code § 22.07). As the Magistrate Judge noted, Corporal Wyman and Investigator Rutherford discussed multiple different options before including only "preventing further violence" in the affidavit. Specifically, the officers discussed waiting until the next morning and adding that seizure of the firearm be a condition placed in the protective order, or contacting the Bureau of Alcohol, Tobacco, Firearms, and Explosives (Dkt. #68 at p. 22, n.21 (citing Government's Ex. 2 at 20:35:10-40; 20:36:33-42)). The Government's argument that Corporal Wyman's failure to include "terroristic threat" in the search warrant affidavit was a mere mistake, or that the officer's believed there was sufficient probable cause because a possible terroristic threat charge existed, is unpersuasive. The dashboard camera video make clear that Corporal Wyman considered but did not include terroristic threat (*see* Government's Ex. 2 at 20:35:10-40; 20:36:33-42). Indeed, Investigator Rutherford and Corporal Wyman discussed whether they might be able to seek felon in possession or to include terroristic threat in the search warrant affidavit. *Id.* The officers collectively determined that Defendant was not a felon in possession. Investigator Rutherford stated that Corporal Wyman would have to make the determination himself regarding terroristic threat. *Id.* Corporal Wyman, following such

discussion, included only "preventing further violence" in the affidavit and warrant. *Id*; Dkt. #49-1. Further, the Government's briefing prior to the date of the Magistrate Judge's amended report and recommendation does not argue that the search warrant affidavit is supported by probable cause because of an alleged terroristic threat; indeed, the Government mentioned it only in passing at the April 18 Hearing (*see* Dkts. #51; #57; #67 at p. 24).

The dashboard camera video makes clear that the officers were aware of other protocols/procedures by which to properly seize Defendant's firearm. *Id*. This Circuit has clearly held that the Second Amendment "'protects the right of individuals ... to privately possess and bear their own firearms.'" *Dickerson v. City of Denton*, 298 F. Supp. 2d 537, 540 (E.D. Tex. 2004) (quoting *United States v. Emerson*, 270 F.3d 203, 260 (5th Cir. 2001)). While the right to bear arms is not absolute, police officers may only confiscate firearms during the search of a premises if, and when, Fourth Amendment requirements have been met. *Id*. Permitting law enforcement officers to seize a gun under the facts presented here could have a grave impact on officers' future conduct. The desire to secure a firearm simply to ensure that it will not be used in any potential violent actions in the future (the assumed and understandable desire of Corporal Wyman in this case), cannot be permitted to the detriment of an individual's constitutional rights.

## II.     *The Extreme Sanction of Exclusion*

The Government's second objection contends that the Magistrate Judge failed to analyze, "as is required," whether the benefits of deterring police misconduct outweigh the costs (Dkt. #69 at p. 17). The United States Supreme Court, beginning with the good-faith exception explained in *Leon*, has "recalibrated [the] cost-benefit analysis in exclusion cases to focus the inquiry on the 'flagrancy of the police misconduct' at issue." *Davis v. United States*, 564 U.S.

229, 238 (2011) (citing *Leon*, 468 U.S. at 909, 911). The Supreme Court has summarized the reasoning of *Leon* and its progeny as follows:

> The basic insight of the *Leon* line of cases is that the deterrence benefits of exclusion vary with the culpability of the law enforcement conduct at issue. When the police exhibit deliberate, reckless, or grossly negligent disregard for the Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. But when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way.

*Davis*, 564 U.S. at 238 (internal citations and quotation marks omitted).

The Government cites a Western District of New York case for the proposition that a magistrate judge must perform this "risk/benefit analysis" prior to excluding evidence (Dkt. #69 at p. 17 (citing *United States v. Ling Zhen Hu*, No. 7-CR-212, 2011 WL 4915734, at *8 (W.D.N.Y. Jan. 21, 2011))). The Fifth Circuit has not, however, found that such an analysis is required by the lower courts. Fifth Circuit precedent dictates that "[e]vidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" *United States v. Chinwoh*, 477 F. App'x 184, 185 (5th Cir. 2012) (quoting *Herring v. United States*, 555 U.S. 135, 143 (2009)). Accordingly, the failure of the Magistrate Judge to perform a "risk/benefit analysis" does not invalidate the finding.

Notwithstanding, the Court herein considers whether the benefits of deterring police misconduct outweigh the societal costs of suppression of the evidence in this case. As previously noted, the law enforcement officers contemplated other ways in which to seize Defendant's firearm; for example, requesting that it be seized in connection with applying for a protective order against Defendant or contacting the Bureau of Alcohol, Tobacco, Firearms, and Explosives. While the Court agrees that Defendant's assault of Ms. Terry is egregious and that

he may well constitute a danger to society (and to Ms. Terry), here the facts are that Defendant was already in custody at the time of the search. His crime (assault) was complete. The weapon was not used in the assault. Rather, the weapon was located a mile away in a residence Ms. Terry was not returning to. Allowing law enforcement officers to seize a firearm that is not linked to a separate or ongoing crime – based upon the facts and circumstances presented here – is not supported by Texas law or this Circuit's precedent. Law enforcement officers cannot be permitted to seize weapons where no probable cause exists for obtaining the firearm and with only a goal of "preventing future violence," particularly when other protocols/procedures are available to them. Accordingly, the Government's second objection is overruled.

## CONCLUSION

Having received the report of the United States Magistrate Judge (Dkt. #68), having considered each of the Government's timely filed objections (Dkt. #69), and having conducted a de novo review, the Court is of the opinion that the recommendation of the Magistrate Judge that the evidence should be suppressed is correct.

It is, therefore, **ORDERED** that Defendant's Motion for Suppression of Evidence (Dkt. #49) is **GRANTED**.

**IT IS SO ORDERED.**
**SIGNED this 17th day of May, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE